UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                                Case No. 12-CR-110 (JPS)

KEVIN PRICE,

        Defendant.
_____

## SENTENCING MEMORANDUM

Kevin Price is scheduled to be sentenced on Thursday, November 1. In order to assist the Court at sentencing, the defense submits the following memorandum in support of its recommendation of a split sentence of six months incarceration followed by six months supervised release. This recommendation is guided by two principle considerations: first, the guidelines overstate the seriousness of Price's offense, namely the unwarranted crack-powder-disparity calls for greater than necessary punishment; second, while nothing excuses Price's crimes his background, his work history, and hitherto pro-social life mitigate the need to punish him with an extended period of incarceration. These two factors call for a split sentence of six months incarceration followed by six months home confinement.
FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

The PSR gives a clear indication of Price's life. He came from a broken home: he rarely saw his dad and his mother was addicted to drugs, frequently prostituting herself. Consequently she lost custody of the kids. While the younger children were placed with family members and in foster care, Price lived with a step-father for a bit until he started providing for himself.

Naturally the weight of that responsibility and the lack of foundation had an effect on him. He committed two petty crimes as a teenager. At 19 he was a father, and soon after his first, he had three more kids. At some point, however, he seemed to slow down. He stayed out of trouble spending his free time fishing and bowling and being there for his kids. He also worked—he has been with the same employer for almost seven years. And he pays much of his income automatically to child support.

In that way, Price has lived a very pro-social life. He has no prior felony convictions and his other offenses were all committed while he was a teenager—13 years ago. He sees his kids and is involved in all their lives: coaching football, taking them fishing, or just being there for them. While he's in arrears with his child support, he does make regular payments out of his checks and he is emotionally present for his kids. In other words, he is being a productive member of society.

It's difficult to reconcile Price's character with his crime. The last fifteen years of his life would not suggest that he'd do something like this. The letters from his

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

family and the statements by Ms. Kirby and Price's sister express that shock. And Price is clearly ashamed of his behavior—he knows that he let down his family, his fiancee, and his kids. He let his past catch up with him. When a friend called and asked if he could middle a deal with another friend, Price agreed. It took time to convince him, but Price eventually did it twice. And for that he has to be punished.

The issue, of course, is how much time is sufficient but not greater than necessary to meet the ends of sentencing. For that matter, what promotes respect for the law and provides adequate deterrence to Price and the public. The Court must start by correctly calculating the guidelines and giving due consideration to the guidelines' recommendation, but it may not presume the appropriateness of a guideline term. *See Nelson v. United States*, 555 U.S. 350, 352 (2009). And the Court is also free to reject any guideline on policy grounds. *United States v. Corner*, 598 F.3d 411, 414-15 (7th Cir. 2010) (en banc). In that way, the Court may find that the guidelines don't accurately reflect the need to punish the defendant. *Kimbrough v. United States*, 552 U.S. 85, 109 (2007)

Under *Kimbrough*, this Court has the discretion to reject the crack/powder disparity. Indeed, this Court and other judges in this district have previously applied the 1:1 ratio. And this decision has been a principled one. Neither the 100:1 or 18:1 ration has ever been grounded in an empirical assessment of risk and harm. Rather, it stands as a political compromise between those who favored the complete

3
FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.
Case 2:12-cr-00110-JPS   Filed 10/31/12   Page 3 of 6   Document 15

elimination of the disparity all together and those who believed that crack offenses should be punished more severely than powder.[1] Congress issued no new findings in making its ameliorative changes to the law. *See* The Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (Aug. 3, 2010). As the Seventh Circuit remarked, the Fair Sentencing Act might benefit from a name change to "The Not Quite as Fair as it could be Sentencing Act of 2010." *United States v. Fisher*, 635 F.3d 336, 338 (7th Cir. 2011).

When Congress directed the Sentencing Commission to amend the guidelines, the Commission implemented the 18:1 ratio without further examination. The change in the guidelines was not based on a study of actual sentencing practices or any other empirical data. *See* U.S.S.G. App. C., Amend. 748, Reason for Amendment (Supplement to the 2010 Guidelines Manual, United States Sentencing Commission, Nov. 1, 2010, pp. 42-43). The Sentencing Commission had criticized the ratio approach in the past, finding that it "overstated the relative harmfulness of crack cocaine compared to powder cocaine [and] overstated the seriousness of most crack cocaine offenses." United States Sentencing Commission, Report to Congress:

---

[1] The Fair Sentencing Act would establish an 18:1 crack-powder ratio, which reflects a bipartisan compromise that was reached in the Senate Judiciary Committee. This 18:1 ratio responds to concerns raised by many in law enforcement, who agree that the 100:1 disparity is unjustified, but argue that crack is associated with greater levels of violence and therefore should be subject to tougher penalties.

Letter of the U.S. Senate Committee on the Judiciary to Colleagues (July 20, 2010), *available at* http://www.famm.org/Repository/Files/Fair%20Sentencing%20Act%20House%20Dear%20Colleague%5B1%5D.pdf (last visited Apr. 3, 2012).

Cocaine and Federal Sentencing Policy, p. 8 (May 2007). The same criticism still applies today. There have been no findings made that the 18:1 ratio more properly captures crack's relative harmfulness or its seriousness. The 18:1 ratio remains a very imperfect tool for determining an individualized sentence for cocaine offenders. Thus, the defense urges this Court to apply the powder cocaine guidelines.

Under the crack-cocaine guidelines, the 55 grams of crack that Price sold place him at level 24. But had Price sold the same amount of powder cocaine, he would start at a level 16—before acceptance of responsibility. Ultimately if this was powder cocaine, his guidelines would be 12–18 months. And he would fall within Zone C. It's worth mentioning that had he sold just five grams less he would be at a level 14, and his guidelines after acceptance of responsibility would have been 10–16 months.

Starting with guidelines of 12–18 months, this Court should then evaluate all of the other § 3553(a) factors that inform the Court's exercise of discretion in fashioning a sentence sufficient but not greater than necessary. Price comes before the Court at 32 and this is his first felony offense. His prior arrests were all when he was a teenager. He has had a steady job for the past five years. Despite previously smoking marijuana, his entire time on bond he has never used drugs. He is paying child support out of every pay check and he's involved in his kids

lives. He coaches their football team, he fishes and bowls with them, and he is an all-around involved and attentive father.

That litany of pro-social behavior, coupled with a guideline range of 12–18 militate towards a split sentence of six months incarceration and six months home confinement. It is a sentence that addresses the disparity between crack cocaine and powder; it also recognizes that Price does not need a significant amount of time to sit in prison and realize how bad his decision to engage in this behavior was. As the letters reflect and I can attest to in all my conversations with him, he regrets terribly what he did.

Dated at Milwaukee, Wisconsin this 31st day of October, 2012.

Respectfully submitted,

**/s/ Joseph A. Bugni**
Joseph A. Bugni
Federal Defender Services
  of Wisconsin, Inc.
517 E. Wisconsin Ave - Ste. 182
Milwaukee, Wisconsin 53202
(414) 221-9900    Tel
(414) 221-9901    Fax